UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVIN ANTONIO CRUZ GAITAN,<br>Petitioner,<br>v.<br>FERETI SEMAIA, WARDEN OF ADELANTO ICE PROCESSING CENTER, ET AL.,<br>Respondents. | Case No. 5:26-cv-05037-AJR<br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

## I.

## INTRODUCTION

On September 1, 2026, Petitioner Marvin Antonio Cruz Gaitan (A# 240-763-749) ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. (Dkt. 1 at 2-4.) Pursuant to General Order 26-05, Respondents Fereti Semaia, Warden of Adelanto ICE Processing Center, Ernesto Santacruz, Jr., Acting Los Angeles Field Office Director of Immigration and Customs Enforcement ("ICE"), Todd Lyons, Acting Director of ICE, Markwayne

Mullin, Secretary of the Department of Homeland Security ("DHS"), and Todd Blanche, Attorney General of the United States (collectively, "Respondents") were required to show cause why the Petition should not be granted no later than September 10, 2026. (Dkt. 5.) Respondents did not do so and therefore have consented to the relief sought in the Petition. See C.D. Cal. L.R. 7-12. On September 14, 2026, Petitioner filed a Notice Regarding Respondents' Failure to Comply with Briefing Schedule and Request for Prompt Adjudication. (Dkt. 6.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 3, 7.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on Petitioner's prior conditions of release.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is supported by a declaration from counsel. (Dkt. 1-1 at 2-6.) Respondents were required to show cause why the Petition should not be granted no later than September 10, 2026, but did not do so. (Dkt. 5.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a 35-year-old native and citizen of Nicaragua. (Dkt. 1 at 4.) He entered the United States at or near Hidalgo, Texas, on or about May 6, 2022. (Id.) Immigration officials detained him briefly at the border and then released him. (Id.) After his release from custody, Petitioner reported through ICE's supervision program, including the Intensive Supervision Appearance Program ("ISAP") and ICE check-ins. (Id.) Petitioner complied with every requirement and missed no in-

person appointment. (Id.) Petitioner lived with his sister, her husband, and their two U.S. citizen children in Pico Rivera, California. (Id.) He held employment authorization, worked, helped support the household, and became a stabilizing emotional presence in his niece's and nephew's lives. (Id.)

Before July 15, 2026, there was no removal proceeding against Petitioner, no removal order, and no missed immigration hearing. (Id. at 5.) On July 15, 2026, Petitioner appeared as directed for a scheduled ICE appointment and ICE officers took him into custody. (Id.) Petitioner was told that he would be detained pending a hearing before an immigration judge. (Id.) The immigration officials did not identify misconduct, danger, flight risk, a reporting violation, or any other changed circumstance. (Id.) ICE asked Petitioner to sing a form agreeing to depart or self-deport, but he refused to do so. (Id.) Between his prior detention and release from custody in May 2022 and his re-arrest on July 15, 2026, Petitioner had no new arrest, criminal charge, or conviction, did not miss an ICE appointment, did not miss an immigration hearing, and did not violate a known condition of supervision. (Id.) ICE has identified no changed circumstance to Petitioner. (Id.)

## III.
## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief (Count I) is that his re-detention by immigration authorities without prior notice or a pre-deprivation hearing violated his procedural due process rights. (Dkt. 1 at 15-16.) Petitioner's second claim for relief (Count II) is that his detention without changed circumstances showing danger, flight risk, or another permissible civil-detentive purpose violates his substantive due process rights. (Id. at 16-17.) Petitioner's third claim for relief is that his arrest without an administrative warrant violates 8 U.S.C. § 1226(a). (Id. at 17.) Petitioner's fourth claim for relief (Count IV) is that his arrest without an a warrant or probable cause to believe that he was likely to escape before a warrant could be

obtained violated 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii). (Id. at 18-19.) Petitioner seeks immediate release from custody and an order enjoining Respondents from imposing any new, additional, or materially more restrictive condition of release—including GPS or electronic ankle monitoring, home confinement, curfews, geographic restrictions, or increased in-person reporting—unless Respondents first provide Petitioner and his counsel with written notice of the proposed condition, the factual basis for imposing it, and a meaningful opportunity to contest it before a neutral decisionmaker, at a hearing where Respondents bear the burden of establishing its necessity by clear and convincing evidence. (Id. at 19-20.) Petitioner further seeks an order enjoining Respondents from re-arresting or re-detaining him on the same factual basis unless they first provide Petitioner and his counsel with at least seven days' written notice and obtain authorization at a pre-deprivation hearing before a neutral decisionmaker, except in the event of a genuine emergency supported by contemporaneous, individualized evidence. (Id.) Finally, Petitioner seeks an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"). (Id.)

## IV.
## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth

Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302

(1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

It is undisputed that Petitioner entered the United States on or about May 6, 2022, was detained briefly at the border, released by immigration authorities, and later placed under the ISAP. (Dkt. 1 at 4.)[1] Thus, the Court concludes that once Petitioner was released from custody on supervision, Petitioner acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the

[1] The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that Petitioner was likely to appear for any future proceeding. See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest in remaining out of custody is strengthened by the length of time he has resided out of custody and built a life for himself in Pico Rivera, California. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Indeed, it is undisputed that Petitioner lived with his sister, her husband, and their two U.S. citizen children, had employment authorization, worked, helped support the houshold and became a stabilizing emotional presence in his niece's and nephew's lives. (Dkt. 1 at 4.) Petitioner's undisputed ties to the community further strengthen his liberty interest in remaining out of custody. See, e.g., Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioner was re-detained by immigration authorities on July 15, 2026, while attending a scheduled ICE appointment and was not provided prior notice or a pre-deprivation hearing. (Dkt. 1 at 5.) It is further undisputed that Petitioner had complied with every requirement of the ISAP and missed no in-person appointment. (Id. at 4.) It is further undisputed that immigration officials did not identify misconduct, danger, flight risk, a reporting violation, or any other changed circumstance. (Id. at 5.) Thus, the Court concludes that Petitioner's re-detention by immigration authorities on July 15, 2026, without

notice or a pre-deprivation hearing, violated Petitioner's procedural due process rights. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody under the ISAP. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-

deprivation hearing before Petitioner may be re-detained.[2] See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community."). Thus, the Court concludes that the Petition must be granted with the foregoing prospective

---

[2] As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor. Under the second Matthews factor, the risk of erroneous deprivation is very high because it is undisputed that Petitioner had complied with every requirement of the ISAP and missed no in-person appointment. (Dkt. 1 at 4.) It is further undisputed that immigration officials did not identify misconduct, danger, flight risk, a reporting violation, or any other changed circumstance. (Id. at 5.) Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

injunctive relief.

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being re-detained in violation of his due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.[3]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the

---

[3] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

petitioner's procedural due process rights).

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees and costs. (Dkt. 1 at 20.) The Court will consider an application under the Equal Access to Justice Act ("EAJA") that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action."). In sum, the Court GRANTS the relief clearly sought in the Petition. (Dkt. 1 at 19-20.) Respondents were required to show cause why the Petition should not be granted no later than September 10, 2026, but did not do so. (Dkt. 5.) Thus, the Court concludes that Respondents have consented to the Court granting the relief requested in the Petition. See C.D. Cal. L.R. 7-12. The Court also concludes that Petitioner has established a *prima facie* case entitling him to the relief requested and Respondents declined to present any fact or argument to oppose the requested relief. Thus, the Court concludes that Petitioner is entitled to the relief requested in the Petition based on the Court's consideration of the merits of Petitioner's claims, separate and apart from the fact that Respondents have consented to such relief being granted.

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner Marvin Antonio Cruz Gaitan (A# 240-763-749) ("Petitioner") from custody on his prior conditions of release (only those conditions in place prior to Petitioner's July 15, 2026 re-detention, if any). Respondents shall also immediately return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226 without providing at least seven (7) days' notice and a pre-

deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED: September 18, 2026

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE